UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JEFFREY ROBERTS,

                              Plaintiff,

v.

ANJALI STOKES LEVINE;
LOUISE MOYA STOKES; and
ANIL KUMAR STOKES,

                              Defendants.

Case No.:  19-cv-567-WQH-BLM

**ORDER**

HAYES, Judge:

The matters before the Court are 1) the Motion to Set Aside Entry of Default Pursuant to Fed. R. Civ. P. 55(c) and Quash Service of Process filed by Defendant Anjali Levine (ECF No. 19); 2) the Motion to Strike Portions of First Amended Complaint filed by Defendants Anjali Levine, Louise Stokes, and Anil Stokes (ECF No. 22); 3) the Motions to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Anjali Levine (ECF No. 23), Louise Stokes (ECF No. 24), and Anil Stokes (ECF No. 25); and 4) the Motion Regarding Choice of Law filed by Plaintiff Jeffrey Roberts (ECF No. 32).

I.      **BACKGROUND**

A.      **Procedural History**

On March 28, 2019, Plaintiff initiated this action by filing a Complaint. (ECF No. 1). Plaintiff filed Proofs of Service as to Louise Stokes and Anil Stokes on April 6, 2019 (ECF Nos. 3-4), and as to Anjali Levine on April 15, 2019 (ECF No. 5). Louise Stokes and Anil Stokes filed Motions to Dismiss the Complaint on April 29, 2019 (ECF Nos. 6-7), but

Anjali Levine never filed a responsive pleading. On May 1, 2019, Plaintiff filed a Request for Entry of Default as to Anjali Levine. (ECF No. 9). The Clerk entered default on May 2, 2019. (ECF No. 2).

Plaintiff filed an Amended Complaint on May 21, 2019. (ECF No. 13). Plaintiff brings claims against Anjali Levine and Louise Stokes for 1) intentional infliction of emotional distress ("IIED"); 2) assault and battery; 3) violation of the Bane Act, section 52.1 of the California Civil Code; 4) invasion of privacy; 5) civil harassment; 6) stalking; 7) fraud; 8) deceit; 9) scheme to defraud and communications fraud in violation of section 817.034 of the Florida Statutes; 10) violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.; 11) malicious civil conspiracy; and 12) stalking and harassment. Plaintiff brings claims against Anil Stokes for 1) malicious civil conspiracy; and 2) aiding and abetting. Plaintiff seeks damages, including punitive damages and attorneys' fees and costs. *Id.* at 32. Plaintiff also seeks an injunction against Anjali Levine and Louise Stokes "against further possession or control of Plaintiff's private information." *Id.* at 33.

On May 23, 2019, Anjali Levine filed a Motion to Set Aside Entry of Default and Quash Service of Process. (ECF No. 19). Plaintiff did not file a response.

On June 6, 2019, Defendants filed a Motion to Strike portions of the Amended Complaint. (ECF No. 22). Defendants each filed a Motion to Dismiss the Amended Complaint. (ECF Nos. 23-25).

On July 15, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion to Strike and Motions to Dismiss. (ECF No. 26). On July 24, 2019, Defendants filed a Reply in support of their Motion to Strike (ECF No. 28) and Replies in support of their Motions to Dismiss (ECF Nos. 29-31).

On July 29, 2019, Plaintiff filed a Motion Regarding Choice of Law. (ECF No. 32). On August 19, 2019, Defendants filed a Response in Opposition to Plaintiff's Choice of Law Motion. (ECF No. 34). Plaintiff did not file a reply.

///

## B. Factual Allegations in the FAC

Plaintiff is a divorced, Orthodox Jewish rabbi with two children, living in Palm Beach County, Florida. Plaintiff alleges that in September 2011, he met Anjali Levine on frumster.com, a dating website for Orthodox Jews. On Plaintiff's frumster.com profile, he "represented himself . . . [as] a religious teacher and counselor . . . ." ECF No. 13 at 3. Plaintiff alleges that, around this same time, Anjali Levine's mother, Louise Stokes, reached out to Plaintiff via Facebook Messenger. Plaintiff alleges that Louise Stokes sought Plaintiff's counseling and guidance regarding Louise Stokes' marriage to Anil Stokes, her plans to divorce Anil Stokes, her desire to convert to Judaism, her financial difficulties, and her sick mother.

Plaintiff alleges that, after "numerous phone calls over several months, Anjali Levine requested to meet Plaintiff in person." Plaintiff alleges that Anjali Levine planned to fly from California, where she lived, to visit Plaintiff in Florida in January 2012. Plaintiff alleges that Anjali Levine forwarded Plaintiff "an authentic-appearing paid-for e-ticket flight itinerary." Shortly before the flight, Anjali Levine cancelled the visit. Plaintiff alleges that this cancelled trip was the first of many. Plaintiff alleges that between 2011 and 2017, Anjali Levine and/or Louise Stokes would send Plaintiff "authentic-appearing e-tickets." These tickets were intended to "dupe" Plaintiff into believing that Anjali Levine and/or Louise Stokes were in Florida attempting to meet him. Plaintiff alleges that Anjali Levine and Louise Stokes intended to harass Plaintiff, and Anjali Levine had no intention of ever meeting him. *Id.* at 4.

Plaintiff alleges that there were approximately fifteen trips between 2011 and 2017 where Anjali Levine "misrepresented" to Plaintiff that she attempted to visit Florida but could not board the plane. There were also six trips where Anjali Levine and Louise Stokes allegedly told Plaintiff that Anjali Levine was in Florida but was too scared to meet Plaintiff in person. *Id.* at 8. Plaintiff alleges that he saw photos on Facebook of Anjali Levine in New York or California when she claimed to be in Florida.

Anjali Levine's second failed trip occurred in March 2012. Plaintiff alleges that he received a booking confirmation from a Palm Beach hotel showing that Anjali Levine paid $368, non-refundable, for a room. Anjali Levine did not show up at the hotel. When Plaintiff pressed Anjali Levine about her failure to come to Florida, Anjali Levine told Plaintiff that she was "afraid to meet him in person" because she was a victim of childhood sexual assault. *Id.* at 4. Plaintiff alleges that he was genuinely concerned and cared for Anjali Levine. Plaintiff counseled Anjali Levine and Louise Stokes on how to deal with Anjali Levine's trauma. Anjali Levine and Louise Stokes confided to Plaintiff that Anjali Levine had suffered from an eating disorder, insomnia, and nervous breakdowns and that Anil Stokes was suffering from Parkinson's disease. Plaintiff alleges that Anjali Levine visited a therapist who was "utterly convinced Anjali was telling the truth." *Id.* ¶ 36. Plaintiff alleges that Anjali Levine and Louise Stokes' representations were false. Anjali Levine, Louise Stokes, and Anil Stokes' ailments were "invented" in order to "appeal[] to Plaintiff's sympathy as a religious teacher and counselor to . . . manipulate, control, psychologically abuse, and defraud Plaintiff." *Id.* at 11. Plaintiff alleges that he became emotionally involved in Anjali Levine's welfare, pouring "years of counseling, care, money, and effort" into Anjali Levine's psychological well-being at the expense of his own health. *Id.* at 6. Plaintiff alleges he suffered from 1) chest pain caused by the stress of Anjali Levine allegedly planning to visit him; 2) pneumonia; 3) fever and skin lesions requiring surgery; 4) blackouts from abnormal blood pressure; and 5) severe emotional distress. *Id.* at 15-16.

Plaintiff alleges that Anjali Levine expressed to Plaintiff that she had "romantic and even sexual fantasies about him." Anjali Levine sent Plaintiff and his children gifts, including a $488 leather briefcase. Plaintiff alleges that Anil Stokes "was aware of and financially enabled Anjali's and Louise's interactions with Plaintiff." *Id.* at 7. Plaintiff alleges that Anjali Levine's claims of romance were insincere, and the gifts were intended to trick Plaintiff into believing her lies.

Plaintiff alleges that Defendants invited him to visit Anjali Levine on eight occasions in New York, Irvine, or Washington, D.C. Plaintiff alleges that when Plaintiff traveled to meet Anjali Levine, she was either not in the city she had claimed to be in or she "actively avoided" Plaintiff during his visit. Plaintiff alleges Anjali Levine "admitted to Plaintiff that she had stalked Plaintiff," and she appeared in photos on Facebook less than a mile from Plaintiff's house on dates when she told Plaintiff she was in California or New York. *Id.* at 10. Plaintiff alleges that Anjali Levine and Louise Stokes would "frantically call[], text[], and arrange[] meetings . . . day after day where they kept him waiting as long as possible, playing on his sympathy and begging for his counsel and support." *Id.* at 12. Plaintiff alleges that on "June 27, 2017, Plaintiff suspected fraudulent intentions on Anjali's and Louise's behalf." Plaintiff "told Anjali he did not want to live knowing she had deceived him in order to test Anjali's reactions." Anjali Levine "urged [Plaintiff] to kill himself immediately." *Id.* at 14.

Plaintiff alleges that between 2011 and 2017, he sent Anjali Levine approximately $8,000 in gifts and cash, based on false representations from Anjali Levine and Louise Stokes that they needed money to pay for Anjali Levine's therapy, travel expenses, and school. Anjali Levine "regularly expressed her desire to receive gold jewelry." *Id.* at 21. Plaintiff alleges that Anjali Levine "bragged" to Plaintiff that she conducted schemes to obtain gifts and money from other Orthodox Jewish men, whom she contacted via Facebook or frumster.com. *Id.* at 22.

## II. MOTION TO SET ASIDE DEFAULT AND QUASH SERVICE

Anjali Levine contends that the Court should set aside entry of default and quash service of process because service of process was defective.[1] (ECF No. 19-1 at 8). Anjali

---

[1] Anjali also requests that the Court take judicial notice of the Motions to Dismiss the Complaint filed by Louise and Anil. (Vokshori Decl., ECF No. 19-5 ¶ 3). Judicial notice of the requested documents is unnecessary for this Order. Anjali's request for judicial notice is denied. *See Asvesta v. Petroustas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

Levine contends that no one served her personally on April 9, 2019, or any other day. Instead, an envelope with Anjali Levine's name was left at the front desk of her office on April 16, 2019. *Id.* at 14.

Pursuant to Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for good cause. "Failure to properly serve a defendant with process pursuant to Fed. R. Civ. P. 4 constitutes good cause to set aside an entry of default." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,* 245 F.R.D. 470, 472 (D. Nev. 2007).

Federal Rule of Civil Procedure 4(e) governs service of process on individuals within a judicial district of the United States. Rule 4(e) provides that a plaintiff may serve an individual by:

> (1) following state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made; or

> (2) doing any of the following:

>> (a) delivering a copy of the summons and of the complaint to the individual personally;

>> (b) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

>> (c) delivering a copy of each to an agent authorized by appointment or by law to accept service.

California state law allows for service upon an individual by 1) delivering a copy of the summons and complaint by "personal delivery . . . to the person to be served;" 2) substitute service combined with mailing after a good faith effort at personal service has been attempted; or 3) service by publication. Cal. Code Civ. Proc. §§ 415.10, 415.20, 415.30, 415.50. Manners of substitute service include "leaving a copy of the summons and complaint during usual office hours in his or her office" or "leaving a copy of the summons

and complaint at the person's . . . usual place of business . . . in the presence of . . . a person apparently in charge of his or her office." Cal. Code Civ. Proc. § 415.20(a)-(b).

Here, Plaintiff bears the burden of establishing that service of process was proper, because default judgment has not been entered. *Brockmeyer*, 383 F.3d at 801. Plaintiff fails to meet his burden. *See SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) ("[A] signed return of service constitutes prima facie evidence of valid service . . . ."). Anjali Levine has submitted Declarations and Exhibits that call the Proof of Service into question, and Plaintiff has not submitted additional evidence of proper service. Plaintiff's failure to show Anjali Levine was properly served constitutes good cause to set aside the entry of default, even though the Complaint is no longer the operative complaint in this matter. *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[W]hen a plaintiff files an amended complaint, the amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (quotation omitted). Anjali Levine's Motion to Set Aside Default and Quash Service of Process (ECF No. 19) is GRANTED.

## III. CHOICE OF LAW MOTION

Plaintiff contends that the Court should apply Florida substantive law to Counts Nine and Ten of the Amended Complaint, which Plaintiff has brought for violations of the Florida Communications Fraud Act ("FCFA"), section 817.034 of the Florida Statutes. Plaintiff contends that there is "no California equivalent" to the FCFA. (ECF No. 32 at 1). Plaintiff contends that the FCFA is different from both California common law fraud and California's codified tort of deceit, because "each of the California [laws] only address liability for specific actions, whereas the very purpose of Florida Statutes § 817.034 is to address 'a systematic, ongoing course of conduct . . . .'" *Id.* at 2 (quoting Fla. Stat. § 817.034(3)(d)). Plaintiff contends that Florida and California's fraud and deceit laws exist to protect persons in their states. Plaintiff's location during the underlying events should, therefore, determine which law governs. Plaintiff contends that the Court should also apply Florida substantive law to Count Twelve for malicious civil conspiracy, because Florida and California civil conspiracy laws are designed to protect the citizens of their respective

states. "Defendants should be held accountable under Florida law for actions directed at a Plaintiff in Florida." (ECF No. 32 at 2).

Defendants contend that Plaintiff fails to meet his burden to show the Court should apply Florida law. (ECF No. 34 at 5). Defendants contend that the FCFA "is not applicable to the facts alleged in the matter and thus there is no conflicting law to choose from." *Id.* at 10. Defendants contend that the FCFA does not apply because Defendants did not conceal their names or attempt to sell Plaintiff any service or product. *Id.* at 11. Defendants contend that, if the FCFA does apply, there is no conflict with California law, because the FCFA is a restatement of the federal wire and mail fraud laws. California courts "employ those same federal wire and mail fraud statutes." *Id.* at 13-14. Defendants contend that California state law addresses schemes to defraud, not only specific, discrete acts. *Id.* at 15. Finally, Defendants contend that California has the greater interest in applying its law, because California was where the alleged wrongs were committed. *Id.* at 16. Defendants contend that Florida and California conspiracy law is virtually identical, so there is no conflict between the two laws. *Id.* at 18.

Federal courts sitting in diversity "must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quotation omitted). The foreign law proponent has the burden to show that foreign law, rather than California law, should apply to the plaintiff's claims. *In re Hyundai v. Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019). To meet their burden, the foreign law proponent must satisfy California's three-step "governmental interest" test. *Id.*

> Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California . . . . If . . . the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case . . . . Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the

final step and select the law of the state whose interests would be 'more impaired' if its law were not applied.

*Wash. Mut. Bank v. Sup. Ct.*, 15 P.3d 1071, 1080 (Cal. 2001) (citations omitted). The preference is to apply California law, rather than choose the foreign law. *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978).

Regarding Plaintiff's Ninth and Tenth Counts, Plaintiff fails to make any argument regarding step three of the governmental interest test. Even if Plaintiff meets his burden at steps one and two of the governmental interest test, Plaintiff fails to show Florida's interest would be more impaired if the Court applies California law than California's interest would be if the Court applies Florida law. *See Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 936 (9th Cir. 2000) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."). Plaintiff fails to meet his burden to demonstrate that the Court should apply Florida law, rather than California law, to Plaintiff's Ninth and Tenth Counts.

Regarding Plaintiff's Twelfth Count, Plaintiff makes no effort to "identify the applicable rule of law in each potentially concerned state and [] show it materially differs from the law of California." *Wash. Mut. Bank*, 15 P.3d at 1080. Plaintiff has not met his burden to show the Court should apply Florida law. The Court applies California law to Counts Nine, Ten, and Twelve. Plaintiff's Motion Regarding Choice of Law (ECF No. 32) is DENIED.

## IV. MOTIONS TO DISMISS

Defendants move to dismiss Plaintiff's Amended Complaint on the grounds it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23-1 at 2).

### A. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is

9

entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## B. <u>Count One – Intentional Infliction of Emotional Distress</u>

Anjali Levine contends that Plaintiff fails to state a claim for IIED, because "Plaintiff's distress flowing from frustrated communications and a failed relationship, with alleged false statements along the way about Defendant Levine's childhood, finances and whereabouts . . . do not rise to the level needed" to show extreme and outrageous conduct. (ECF No. 23-1 at 6-7). Louise Stokes contends that her statements to Plaintiff regarding Anjali Levine's well-being and childhood traumas "fail to constitute actionable conduct." Louise Stokes contends that the email from Plaintiff to Louise Stokes, which Plaintiff attaches to his Amended Complaint, shows Plaintiff "liked" Louise Stokes, not that she caused Plaintiff emotional distress. (ECF No. 24-1 at 6). Louise Stokes contends Plaintiff has not alleged that Louise Stokes intended to cause Plaintiff emotional distress. *Id.* at 5. Anjali Levine and Louise Stokes also contend that Plaintiff's IIED claim is barred by the applicable two-year statute of limitations. (ECF No. 23-1 at 7).

Plaintiff contends that he "does not claim 'mere rudeness and insensitivity,' . . . [h]e claims specific physical harm on specific dates, well documented by medical records . . . ." (ECF No. 26-1 at 12). Plaintiff also contends a three-year statute of limitations applies to every Count in the Amended Complaint, because "[t]he essence of this lawsuit is fraudulent misrepresentation." *Id.* at 10-11.

To establish a claim for IIED, a plaintiff must show:

(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quotation omitted). A defendant's conduct is "outrageous" when it is "so extreme as to exceed all abounds of that usually tolerated in a civilized community." *Id.*

Plaintiff makes the conclusory allegation that he "has suffered severe emotional distress since discovering the reality of Defendants' interactions with him." (ECF No. 13 at 16). Plaintiff alleges that Anjali Levine told Plaintiff that he should kill himself. Plaintiff alleges, however, that he told Anjali Levine he did not want to live "*in order to test Anjali's reactions*." *Id.* at 14 (emphasis added). Plaintiff alleges that Anjali told Plaintiff to kill himself after Plaintiff suspected Defendants' "fraudulent intentions." *Id.* at 14-15. Plaintiff fails to state facts sufficient to show Anjali Levine or Louise Stokes' conduct constitutes "extreme and outrageous conduct." *See Nagy v. Nagy*, 258 Cal. Rptr. 787, 791 (Ct. App. 1989) ("Although we do not condone respondent's misrepresentations, they are similar to a 'betrayal,' for which the law wisely should not provide a remedy."). Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's First Count are GRANTED.

### C. <u>Count Two – Assault and Battery</u>

Anjali Levine and Louise Stokes contend that Plaintiff's Amended Complaint is defective because Plaintiff pleads assault and battery as a single cause of action. (ECF No. 23-1 at 8-9). Anjali Levine and Louise Stokes contend that Plaintiff fails to state a claim

for battery or assault, because "no allegations suggest in any way that [Anjali Levine or Louise Stokes] ever had physical contact with Plaintiff to make a 'battery' even possible." Anjali Levine and Louise Stokes contend that "[t]here are no facts alleged to show that [Anjali Levine or Louise Stokes] acted with the intent to make physical contact with Plaintiff, nor that [they] ever threatened to physically touch him." *Id.* at 10. Plaintiff requests "leave to Amend the current Complaint in order to state assault and battery allegations as separate claims."

> The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching.

*So v. Shin*, 151 Cal. Rptr. 3d 257, 269 (Ct. App. 2013); California Civil Jury Instructions (2017) ("CACI") No. 1300.

> The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm.

*So*, 151 Cal. Rptr. at 269; CACI No. 1301.

In the Amended Complaint, Plaintiff alleges that "Anjali and Louise intended to and did repeatedly inflict bodily harm on Plaintiff." (ECF No. 13 at 17). Plaintiff states no facts to support this conclusory allegation. Plaintiff does not allege that Anjali Levine or Louise Stokes touched Plaintiff or caused Plaintiff to be touched. Plaintiff fails to state a claim for battery against Anjali Levine or Louise Stokes.

Plaintiff alleges that "Anjali assaulted Plaintiff by repeatedly seeking to convince him to kill himself." *Id.* Anjali Levine's alleged statements telling Plaintiff to commit suicide do not amount to an assault. *See Plotnik v. Meihaus*, 146 Cal. Rptr. 3d 585, 598

(Ct. App. 2012) ("Mere words, however threatening, will not amount to an assault."). Plaintiff does not allege Anjali Levine or Louise Stokes intended or threatened to touch Plaintiff or cause him to be touched. Plaintiff does not allege he reasonably believed he was about to be touched in a harmful or offensive manner. Plaintiff fails to state a claim for assault against Anjali Levine or Louise Stokes. Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's Second Count are GRANTED.

### D. <u>Count Three - Violation of the Bane Act</u>

Anjali Levine and Louise Stokes contend that Plaintiff fails to state a claim for violation of the Bane Act, because Plaintiff does not allege that Anjali Levine or Louise stokes "threatened, intimidated, or committed violence against him." Anjali Levine asserts that she and Plaintiff never met, so no battery was possible. Anjali Levine contends that her alleged "stalking" cannot support a Bane Act claim, because "Plaintiff was unaware of the conduct and thus felt no threat or intimidation." Anjali Levine contends that Plaintiff's allegation that Anjali Levine encouraged Plaintiff to kill himself was not a credible threat of violence. (ECF No. 23-1 at 12). Anjali Levine and Louise Stokes contend that Plaintiff fails to allege that he was prevented from doing something he was entitled to do by law. *Id.* at 13. Plaintiff contends that Anjali Levine and Louise Stokes' coercion and threats of violence were covert; Anjali Levine and Louise Stokes "worked together through fraud and deceit to harm Plaintiff and then Anjali Levine sought to coerce Plaintiff into committing suicide." (ECF No. 26-1 at 13).

The Bane Act permits an individual to pursue a civil action for damages where another person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threat[], intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do

something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Ct. App. 2007) (quoting *Jones v. Kmart Corp.*, 949 P.2d 941, 946 (Cal. 1998)).

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

Cal. Civ. Code § 52.1(k).

Plaintiff fails to identify any "rights" that Anjali Levine or Louise Stokes sought to interfere with. Cal. Civ. Code § 52.1(b). Plaintiff does not allege that Anjali Levine or Louise Stokes threatened violence, that Plaintiff reasonably feared violence would be committed against him or his property, and that Anjali Levine and Louise Stokes had the ability to carry out any threatened violence. Cal. Civ. Code § 52.1(k). Plaintiff fails to state facts sufficient to show Anjali Levine or Louise Stokes violated the Bane Act. Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's Third Count are GRANTED.

### E. **Count Four – Invasion of Privacy**

Anjali Levine and Louise Stokes contend that Plaintiff fails to state a claim for invasion of privacy, because "Plaintiff does not claim that Defendants gained unconsented access to his home or to any personal or private information." (ECF No. 23-1 at 14). Anjali Levine and Louise Stokes also contend that Plaintiff's claim for invasion of privacy is barred by the applicable one-year statute of limitations. *Id.* at 15. Plaintiff contends that he "was duped into performing certain actions based on the defendants' misrepresentations." Therefore, any personal disclosure was not voluntary. (ECF No. 26-1 at 13). Plaintiff contends that each cause of action is subject to the three-year statute of limitations for fraud or mistake. *Id.* at 11.

The tort of intrusion into private affairs, or intrusion upon seclusion, requires: (1) the defendant's intentional intrusion into a private place, conversation, matter, affairs, or concerns; (2) in a manner highly offensive to a reasonable person. *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007).

> To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.

*Shulman v. Group W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998).

Plaintiff does not allege facts from which the Court can infer that Anjali Levine or Louise Stokes "penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data." Plaintiff makes the conclusory allegation that Anjali Levine was stalking him. (ECF No. 13 at 10). Plaintiff fails to allege facts to show Anjali Levine intruded into any "secluded" area where Plaintiff has a reasonable expectation of privacy. *See Sanders v. Am. Broad. Cos.*, 978 P.2d 67, 71 (Cal. 1999) ("The first element is not met when the Plaintiff has merely been observed, or even photographed or recorded, in a public place."). Anjali Levine and Louise Stokes' Motions to Dismiss the Fourth Count are GRANTED.

### F. **Count Five – Civil Harassment**

Anjali Levine and Louise Stokes contend that Plaintiff's claim for harassment under section 527.6(b)(3) of the California Code of Civil Procedure[2] is an "expedited process, [] not properly included as a cause of action in a complaint." (ECF No. 23-1 at 16). Anjali Levine and Louise Stokes contend that Plaintiff does not state a claim for harassment because Plaintiff does not state facts that show Anjali Levine or Louise Stokes threatened violence or engaged in "a knowing and willful course of conduct directed at Plaintiff."

---

[2] The Parties mistakenly reference section 527.6 of the "California Civil Code" in the Amended Complaint, Motions, and Response.

15

Anjali Levine and Louise Stokes contend that Plaintiff's claim is barred by either a two- or three-year statute of limitations. *Id.* at 17. Plaintiff contends that his Amended Complaint is "explicit," and he "most certainly claims and outlines" conduct that falls under section 527.6(b)(3). (ECF No. 26-1 at 14).

California Code of Civil Procedure section 527.6 provides: "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." Cal. Code Civ. Proc. § 527.6(a)(1). "Harassment" is:

> Unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Cal. Code Civ. Proc. § 527.6(b)(3). Section 527.6 "was enacted to provide an *expedited procedure* for preventing 'harassment' as defined." *Byers v. Cathcart*, 67 Cal. Rptr. 2d 398, 402 (Ct. App. 1997) (emphasis added). Section 527.6 "provides for temporary restraining orders to handle immediate problems, followed quickly by a court hearing on a limited-scope antiharassment injunction—normally within 15 days, but in no case more than 22 days even if time is extended for good cause." *Id.* at 402-03 (citing Cal. Code Civ. Proc. § 527.6(c)-(d)). Section 527.6 "does not allow for final resolution of disputed rights." *Byers*, 67 Cal. Rptr. at 403.

Here, Plaintiff seeks final resolution of disputed rights; he does not seek a temporary injunction. Plaintiff does not assert any reason that a cause of action for a violation of section 527.6 is properly included in the Amended Complaint. Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's Fifth Count are GRANTED.

### G. Count Six – Stalking

Anjali Levine and Louise Stokes contend that Plaintiff fails to state a claim for stalking, because he does not allege Anjali Levine or Louise Stokes engaged in a pattern

of conduct intended to harass, alarm, or place Plaintiff under surveillance. (ECF No. 23-1 at 18). Anjali Levine and Louise Stokes contend they did not make a threat that would cause Plaintiff to fear for his safety. *Id.* at 18-19. Plaintiff contends that he "feared for his personal wellbeing and that he demanded that Anjali's 'visits' stop for over three years, but that she continued." (ECF No. 26-1 at 14-15).

Under section 1708.7 of the California Civil Code, an individual is liable for the tort of stalking when a plaintiff shows:

(1) The defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff. In order to establish this element, the plaintiff shall be required to support his or her allegations with independent corroborating evidence.

(2) As a result of that pattern of conduct, either of the following occurred:

(A) The plaintiff reasonably feared for his or her safety . . . .

(B) The plaintiff suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress.

(3) One of the following:

(A) The defendant, as a part of the pattern of conduct specified in paragraph (1), made a credible threat with either (i) the intent to place the plaintiff in reasonable fear for his or her safety, . . . or (ii) reckless disregard for the safety of the plaintiff . . . . In addition, the plaintiff must have, on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted in his or her pattern of conduct unless exigent circumstances make the plaintiff's communication of the demand impractical or unsafe.

(B) The defendant violated a restraining order . . . .

Cal. Civ. Code § 1708.7(a).

Assuming that Plaintiff sufficiently alleges Anjali Levine or Louise Stokes engaged in a prohibited pattern of conduct, Plaintiff fails to "support his . . . allegations with independent corroborating evidence" as required by subdivision (a)(1). The Exhibits Plaintiff attaches to his Amended Complaint show that Plaintiff actively reached out to Anjali Levine and Louise Stokes, wanted to meet Anjali Levine in person, and enjoyed his conversations with Anjali Levine and Louise Stokes. *See, e.g.*, ECF No. 16-2 at 1 (April 3, 2012, Facebook Messenger chain, Louise Stokes: "I would love to talk;" Plaintiff: "sounds great!"); ECF No. 15-5 at 2 (November 18, 2013, email from Plaintiff to Louise Stokes stating, "I've tried to reach out to you as much as I know how since I first met Anjali;" and "I was only too happy to spend hours on the phone"); ECF No. 17-3 at 1 (December 25, 2013, email from Plaintiff to Louise Stokes stating, "Anjali . . . can NOT run again . . . . Please call me"); ECF No. 17-5 at 1 (January 30, 2014, email from Plaintiff to Louise Stokes stating, "Are [you and Anjali Levine] planning on meeting me at some point, or just leaving?"). Anjali Levine's July 16, 2017, email to Plaintiff, stating that she "will pay restitution for the emotional harm I caused you" (ECF No. 18-4 at 1), is insufficient to show Anjali Levine stalked Plaintiff. Plaintiff also does not allege that Anjali Levine or Louise Stokes made a "credible threat" as required by subdivision (a)(3). Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's Sixth Count are GRANTED.

## H. Counts Seven Through Ten – Fraud and Deceit

Anjali Levine and Louise Stokes contend that Plaintiff fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). (ECF No. 23-1 at 19). Anjali Levine and Louise Stokes contend that Plaintiff requires Anjali Levine and Louise Stokes to "guess at [their] hazard which statements and which acts, flowing back to 2011, and which of the 25 Exhibits, are supposedly being relied on by Plaintiff." Anjali Levine and Louise Stokes contend that their conversations with Plaintiff are non-actionable personal opinions and expressions of statement of mind. *Id.* at 20. Louise Stokes contends that Plaintiff fails to allege that Louise Stokes' statements induced Plaintiff to pay for anything. Louise Stokes also contends Plaintiff's Seventh and Eighth Counts are barred by

the three-year statute of limitations. (ECF No. 24-1 at 19). Plaintiff contends his assertion that Anjali Levine and Louise Stokes targeted Orthodox Jewish men is fundamental to Anjali Levine and Louise Stokes' "malicious intentions." (ECF No. 26-1 at 15).

Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotation omitted).

In a suit involving multiple defendants, "there is no absolute requirement that . . . the complaint must identify *false statements* made by each and every defendant." *Swartz*, 476 F.3d at 764 (emphasis in original). "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (quotation and alterations omitted). "[A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (quotation and alterations omitted).

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Sup. Ct.*, 909 P.2d 981, 984 (Cal. 1996) (quoting 5

Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778). California's tort of deceit has been codified at section 1709 of the California Civil Code, which provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." A "deceit" under section 1709 is any one of the following: 1) "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true;" 2) "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;" 3) "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact;" or 4) "[a] promise, made without any intention of performing it." Cal. Civ. Code § 1710.

Plaintiff alleges that Louise Stokes "regularly presented [herself] as needing money," but he fails to state facts that show Louise Stokes intended to induce Plaintiff to give her money. ECF No. 13 at 21; *see Ashburn v. Miller*, 326 P.2d 229, 238 (Ct. App. 1958) ("Intent to defraud is not the essence of a suit for deceit; it is the intent to induce action by the other party that counts."). Plaintiff alleges that "Defendants outright requested money from Plaintiff," but he fails to connect this request to any misrepresentation. Plaintiff fails to allege "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106. Plaintiff also fails to connect his claimed damages—"$8,000 in gifts and cash 2011-2017 based on Defendants' misrepresentations"—to any alleged misrepresentations. (ECF No. 13 at 21). Plaintiff's allegations do not meet the heightened pleading standard required to state a claim for fraud or deceit under Rule 9(b). Anjali Levine and Louise Stokes' Motions to Dismiss the Seventh through Tenth Counts are GRANTED.

## I. <u>Count Eleven – RICO Violation for Mail and Wire Fraud</u>

Anjali Levine and Louise Stokes contend that Plaintiff "only states in the most conclusory terms a scheme or plan on the part of Anjali and Louise to engage in mail fraud." (ECF No. 23-1 at 21). Anjali Levine contends that Plaintiff fails to plead the contents of any writing allegedly authored by Anjali Levine. Anjali Levine and Louise

Stokes contend that Plaintiff's gifts of money and property are not a cognizable form of damages under RICO. *Id.* at 22. Anjali Levine and Louise Stokes also contend that Plaintiff's claim is barred by the applicable four-year statute of limitations. *Id.* at 23. Plaintiff contends that the gifts he sent Anjali Levine and Louise Stokes were not voluntary "in the context of allegations of fraud." Plaintiff contends that he states damages in the amount of "$8,000 in gifts and cash." Plaintiff also contends that the statute of limitations has not expired because he did not discover Defendants' misrepresentations until June 27, 2017. (ECF No. 26-1 at 16).

To state a RICO violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation omitted). Predicate acts can include mail or wire fraud, which share the same elements:

> (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud.

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986); 18 U.S.C. §§ 1341, 1343.

Plaintiff makes the conclusory allegations that Anjali Levine and Louise Stokes devised "a scheme to defraud" and that Anjali Levine told Plaintiff she had "conducted an analogous scheme" in the past. (ECF No. 13 at 22, 26). Plaintiff does not state facts to support these allegations. Plaintiff fails to meet his burden under Rule 9(b). Anjali Levine and Louise Stokes' Motions to Dismiss Plaintiff's Eleventh Count are GRANTED.

## J. <u>Count Twelve – Civil Conspiracy</u>

Anjali Levine, Louise Stokes, and Anil Stokes contend that "a civil conspiracy is not an independent tort." (ECF No. 23-1 at 23). Plaintiff's conspiracy claim fails, because Plaintiff's claims for the underlying torts fail. *Id.* at 24. Louise Stokes contends that

Plaintiff fails to plead facts to demonstrate that she entered into a common plan with Anjali Levine to commit a tort. (ECF No. 24-1 at 25). Anil Stokes contends that he is "not mentioned once in the claim for conspiracy" and that Plaintiff fails to allege Anil Stokes entered into an agreement with the other Defendants. (ECF No. 25-1 at 6). Plaintiff contends that Defendants have not challenged civil conspiracy under Florida law, so they have not challenged Plaintiff's Twelfth Count. (ECF No. 26-1 at 16).[3]

> Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.* (1994) 869 P.2d 454, 457 (Cal. 1994). The elements of a civil conspiracy are 1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; 2) a wrongful act committed pursuant to the agreement; and 3) resulting damages. *Id.*

"Standing alone, a conspiracy does no harm and engenders no tort liability." *Id.* Without an underlying tort, a claim for conspiracy cannot stand. *See Okun v. Sup. Ct.*, 629 P.2d 1369, 1376 (Cal. 1981) ("A complaint for civil conspiracy states a cause of action only when it alleges the commission of a civil wrong that causes damage. Though conspiracy may render additional parties liable for the wrong, the conspiracy itself is not actionable without a wrong."). A motion to dismiss the conspiracy cause of action should be granted if no actionable conduct is alleged. *Id.*

Here, Plaintiff does not state facts to show any Defendants conspired with another to commit a tort. Plaintiff fails to state facts showing Defendants agreed to commit each of the wrongful acts alleged in the Complaint, instead generally alleging that Louise Stokes

---

[3] The Court has ordered California conspiracy law applies to Plaintiff's claim.

"reinforced" Anjali Levine's "false narrative." *Id.* Plaintiff's conclusory allegations are insufficient. Defendants' Motions to Dismiss Plaintiff's Twelfth Count are GRANTED.

## K. <u>Count Fourteen[4] – Aiding and Abetting</u>

Anil Stokes contends that Plaintiff fails to state a claim for aiding and abetting, because he has failed to plead "knowledge" or "intent." (ECF No. 25-1 at 8). Plaintiff does not respond to Anil Stokes' contention.

Aiding and abetting requires the commission of an underlying tort. *See* CACI 3610.

> Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1475 (Ct. App. 2014). To plead aiding and abetting, the plaintiff must allege that the defendant "had actual knowledge of the specific primary wrong" being committed. *Casey v. Bank Nat. Assn.*, 26 Cal. Rptr. 3d 401, 406 (Ct. App. 2005).

Plaintiff alleges Anil Stokes lived with Anjali Levine and Louise Stokes, was "aware" of Anjali Levine and Louise Stokes' interactions with Plaintiff, and paid for Anjali Levine's therapy, flights to see Plaintiff, and gifts for Plaintiff and his children. (ECF No. 13 at 32). Plaintiff fails to allege facts from which the Court can infer that Anil Stokes had knowledge of any specific, primary wrong. Anil Stokes' Motion to Dismiss Plaintiff's Fourteenth Count is GRANTED.

///

///

///

---

[4] Plaintiff and Defendants refer to the "aiding and abetting" count as "Count Thirteen." However, the Amended Complaint states that Count Thirteen is for "Stalking & Harassment." (ECF No. 13 at 30). "Aiding and Abetting" is Count Fourteen. *Id.* at 31.

## V.    MOTION TO STRIKE

Defendants move to strike certain allegations in the Amended Complaint on the grounds that they are redundant, immaterial, impertinent, or scandalous under Federal Rule of Civil Procedure 12(f) (ECF No. 22-1).

### A. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Redundant" matter is needlessly repetitive. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). "Immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711. Scandalous matter "cast a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Motions to strike should only be granted when it is "clear that it can have no possible bearing on the subject matter of the litigation," *Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc.,* 870 F. Supp. 2d 1015, 1039 (D. Haw. 2012), and should not be used "to dismiss a claim for damages on the basis it is precluded as a matter of law," *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010).

### B. <u>Immaterial, Impertinent, and Redundant Language</u>

Defendants move to strike certain allegations in the Amended Complaint on the grounds that they are "historical matter" that are immaterial, impertinent, and redundant. Specifically, Defendants move the Court to strike paragraphs 10-21, 25, 27, 31-33, 35, 36, 38, and 39, and paragraph "31" on page 13 of the Amended Complaint. (ECF No. 22-1 at 10). Plaintiff contends that the allegations in the Amended Complaint are not "genuinely and obviously irrelevant to the stated causes of action." (ECF No. 26-1 at 7).

The allegations in the paragraphs Defendants move to strike have potential bearing on the subject matter of this litigation. Defendants' communications with Plaintiff, the failed attempts to meet, and alleged false statements (paragraphs 10-21) have a direct bearing on each of Plaintiff's claims. The gifts Anjali Levine allegedly sent Plaintiff (paragraphs 25, 25) are material to Plaintiff's claims and damages. The actions described in paragraphs 31-33, 35, 36, 38, and 39, and paragraph "31" on page 13, are material to Plaintiff's claims. The Court cannot conclude these allegations have no possible bearing on any of Plaintiff's claims. Defendants' Motion to Strike paragraphs 10-21, 25, 27, 31-33, 35, 36, 38, and 39, and paragraph "31" on page 13, is DENIED.

**C. <u>Scandalous Matter</u>**

Defendants move to strike certain Exhibits and allegations in the Amended Complaint on the grounds that they "are scandalous and ha[ve] no legal relationship to any of Plaintiff's 14 Counts." (ECF No. 22-1 at 11). Specifically, Defendants move to strike paragraphs 4, 6, 10, 13, 27, 29, 74, 75, 91, 92, and 93, and all the incorporated Exhibits. *Id.* at 12. Plaintiff contends that "[i]t is not scandalous, as here, to allege that a defendant being sued for fraud is a fraudster." (ECF No. 26-1 at 6).

None of the paragraphs or Exhibits challenged by Defendants allege scandalous matter. All of the allegations are material to jurisdiction, venue, or Plaintiff's claims against Defendants. Defendants do not show how the allegations "cast a cruelly derogatory light." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d at 965. Defendants' Motion to Strike paragraphs 4, 6, 10, 13, 27, 29, 74, 75, 91, 92, and 93, and all the incorporated Exhibits, is DENIED.

**D. <u>Redundant Claims</u>**

Defendants contend the Court should strike certain Counts and allegations in the Amended Complaint, because they are based on Florida Law and are therefore repetitive of Plaintiff's California law claims for the same conduct. Defendants contend that the Court should strike Plaintiff's Eighth, Ninth, Tenth, and Twelfth Counts, paragraph 50 of the Fourth Count, and paragraphs 104, 105, and 110 of the Thirteenth Count, because Plaintiff

improperly alleges violations of Florida law in a California law complaint. Defendants contend that Plaintiff's Thirteenth count for stalking and harassment is redundant of Plaintiff's two other claims for stalking and harassment. (ECF No. 22-1 at 14). Plaintiff contends that choice of law issues are not properly raised in a motion to strike. (ECF No. 26-1 at 7).

The Court has dismissed many of the Counts Defendants seek to strike: Four, Eight, Nine, Ten, and Twelve. Defendants' Motion to Strike these counts is moot. Regarding the Thirteenth Count, a motion to strike is not a proper filing in which to raise substantive choice of law issues. *See Tattersalls Ltd. v. Wiener*, No. 3:17-cv-1125-BTM-JLB, 2019 U.S. Dist. LEXIS 26238, at *10 (S.D. Cal. Feb. 19, 2019) ("The Court declines to rule on choice-of-law issues in a motion to strike."). Defendants' Motion to Strike the Eighth, Ninth, Tenth, Twelfth, and Thirteenth Counts, paragraph 50 of the Fourth Count, and paragraphs 104, 105, and 110 of the Thirteenth Count, is DENIED.

### E. **Impertinent Request for Relief**

Defendants contend that Plaintiff's request for punitive damages and attorneys' fees and costs is impertinent, because "[n]ot all of Plaintiff's claims . . . support the recovery of punitive damages and attorneys' fees and costs." (ECF No. 22-1 at 18).

Defendants' request is precluded by the holding in *Whittlestone*. The court in *Whittlestone* held that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." 618 F.3d at 975; *see id.* at 974 ("[T]he claim for damages is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged."). Here, Plaintiff's requests for punitive damages and attorneys' fees and costs are directly related to the harms Plaintiff alleges. *See Powell v. Wells Fargo Home Mortg.*, No. 14-cv-04248-MEJ, 2017 U.S. Dist. LEXIS 97607, at *1 (N.D. Cal. Jun. 23, 2017) (finding that the defendant could not raise issues of punitive damages or attorneys' fees in a motion to strike because *Whittlestone* has rejected these claims as a proper basis for a Rule 12(f) motion). Defendants' Motion to Strike portions of Plaintiff's prayer for relief is DENIED.

## VI. CONCLUSION

IT IS HEREBY ORDERED THAT Anjali Levine's Motion to Set Aside Entry of Default Pursuant to Fed. R. Civ. P. 55(c) and Quash Service of Process (ECF No. 19) is GRANTED. Defendants' Motion to Strike Portions of First Amended Complaint (ECF No. 22) is DENIED. Defendants' Motions to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 23, 24, 25) are GRANTED. Plaintiff's Motion Regarding Choice of Law (ECF No. 32) is DENIED.

IT IS FURTHER ORDERED that Plaintiff shall file any motion for leave to amend the Complaint within 30 days of the date of this Order.

Dated: October 30, 2019

Hon. William Q. Hayes
United States District Court

19-cv-567-WQH-BLM